Good morning. May it please the Court, Amy Codd-Ignone on behalf of the Appellant Gareth Francis. The respondents have conceded that Mr. Francis over-served his prison term. The issue presented for this Court is whether the over-service of his prison term was the result of a constitutional violation. This Court should hold that Mr. Francis was deprived of a liberty interest in earned good conduct time, whether created by the United States Code or the Code of Federal Regulations, without due process, because the post-deprivation remedy and the in-abstantia hearings were insufficient to satisfy the due process clause. Mr. Francis had a liberty interest in his earned good conduct time, which was created by the United States Code. Title 18 of the United States Code, Section 3624, has created a liberty interest, and the United States Supreme Court has recognized that where good conduct time reduces the duration of an inmate's sentence, it implicates a liberty interest. Here, like the statute in Wolf v. McDonnell, Section 3624 mandates that an inmate shall be released on the date of the expiration of the prisoner's term of imprisonment less any time credited for earned good conduct time. The statute provides that an inmate may receive up to 54 days credit, and the Bureau of Prisons has codified a regulation, 28 of the Code of Federal Regulations, 523.20, which states that the Bureau will award 54 days of credit for each year served. The Bureau of Prisons has implemented this statute to say that the inmate will accrue 54 days of credit per year. In practice, at the outset of an inmate's sentence, the inmate is given an anticipated earned good conduct time release date, and the Bureau of Prisons has said that when an inmate starts his sentence, he will receive 54 days of credit for each full year served. Could you explain to me exactly what it is you want? As I understand it, the client was let out earlier than the full sentence, but not by enough. So he got a partial remedy in terms of some of the good faith credit was restored at a time when he could still use it. Certainly. And then another portion in the post-deprivation hearing, the court found he was not entitled to, or the administrative hearing found he was not entitled to. And as I understand it, that was about, what, 41 days? There were 41 days that were deprived of post-deprivation. And then that left over 52 days that the administrative proceeding found he should have been given, but he wasn't, and he'd already served them. Correct. And as I understand it, the district court has remedied, or purported to remedy, those 52 days by taking it into consideration in the way he dealt with the release provisions. Well, I'm requesting two things. I'm requesting a finding that the 90 days that he served over past his good conduct time release date, as earned, be restored. And a finding that What do you mean restored? We can't go back and change that. the Bureau of Prisons to have his record reflect that he should have been released on October 10th, 2012. And I'm also requesting a finding that the post-deprivation remedy that occurred here for every day that he served past October 10th, 2012 was the result of a constitutional violation in violation of his right to due process. And I would suggest that that's warranted based upon Wolf v. McDonnell and Sandin v. Conner. What I've just heard you say is you want two pieces of paper, neither of which has a dollar sign on them. You want a piece of paper entered saying you were supposed to get out on X date. Yes. And then you want a piece of paper saying, because we didn't let you out on X date, it was a violation of your constitutional rights. Mr. Francis has only filed a petition for writ of habeas corpus at this point. And it's my understanding that if he wanted something with a dollar sign, that he would have to do that under 1983 or another. But why are those pieces of paper the type of relief we can give in habeas? Because it affects the duration of the sentence that he was under when he was in custody of the Bureau of Prisons, and it would have affected his supervised release term. But hasn't the district court judge already taken the 52-day? In other words, if you're wrong about the 41, let's put that to one side for a second. Hasn't our district court judge in the habeas proceeding already given your client all the relief that could possibly be given under a habeas proceedings without a time machine? In other words, he's taken those 52 days into consideration as much as he can going forward. There was no hearing after that one very brief non-evidentiary hearing in which the court took into account expressly or not expressly the days that he over-served his prison sentence. Mr. Francis was unfortunately alleged to have violated his supervised release, and that was not mentioned at the later hearing of the criminal process. So are you saying that the district court did not take the 52 days into consideration? That is what I'm saying. There was no further hearing on the petition for writ of habeas corpus, and it was not mentioned at the criminal proceedings. If you were right on that, then you would want from us an order of remand to see if the court was taking it into consideration? Well, I would suggest that that would be appropriate, or an order directing the Bureau of Prisons to correct his prison record to reflect his correct date of release. If they find that the district court did take the 52 days into consideration, then is there anything else that we could possibly do for your client on the 52 days? Under a habeas proceeding. A finding that it was that those days were taken from him in violation of the Due Process Clause I think is within the realm and jurisdiction of this court. Now on the 41 days, since the ultimate decision was that he was not entitled to those 41 days, if that was correct, then how does it harm your client that that ultimate decision was made 90 plus days after the violation as opposed to five days? Well, I would suggest that Wolf v. McDonnell would have given Mr. Francis a vested liberty interest. And so the fact that it occurred 90 days after his earned good conduct time release date was still a constitutional violation because he was entitled to a finding before the deprivation of the good conduct time credits. And the way that the Bureau of Prisons has looked at this statute and has codified its own regulations reflects that, which is that an inmate will receive these days each year and that before a deprivation of that earned good time credit, the inmate is to receive a finding in a hearing saying that the inmate had violated a prohibited, had committed a prohibited act. What I hear you saying is the rules say he's supposed to get it beforehand. Yes. But he didn't. Yes. He then afterwards did get a post-deprivation proceeding in which the court, in which the administrative body determined he was wrong, he should lose. Why wasn't that an adequate remedy since it ultimately turned out that he suffered no harm? Well, it wasn't an adequate remedy because Mr. Francis received the hearing at a much later time. He was in an entirely different state. Any witnesses or documentary evidence or anything that would have been helpful in that hearing weren't available to the DHO when it occurred. What evidence is there of that? Well, Mr. Francis requested to have a live witness. He requested a staff representative as well from the Coolidge House and that person was not able to be present and to help and had only submitted a letter in support. And I would suggest that the closeness in time in following the Code of Federal Regulations would have been helpful to him to marshal evidence in favor of his defense in effect and to present those live witnesses as Wolf versus McDonnell has said that he's entitled to do would have been something substantial for him. And again, it is my assertion that he was entitled to due process prior to the deprivation and the United States Supreme Court has said that when you have a liberty interest, when it has vested, you're entitled to process prior to the deprivation and a deprivation that occurs after or a hearing that occurs after is simply not sufficient in the constitutional sense to satisfy his due process rights under the Fifth Amendment to the United States Constitution. I would suggest further that the BOP regulations themselves created a liberty interest even if this Court does not find that there was a vested liberty interest from Section 3624. In looking at 28 of the Code of Federal Regulations, 523.20, and in looking at Sandin versus Connor, this Court can hold that the BOP granted a right or expectation that adverse action would not be taken against Mr. Francis unless he was first found to have committed a prohibited act. And I would suggest that in line with Sandin versus O'Connor, this is the type of atypical and significant hardship, the over-service of one's prison time, which is the difference between custody and full liberty or liberty under supervised release, is exactly the atypical and significant hardship that should require the BOP to follow the regulations when they give an inmate an expectation that they will be followed. And I would suggest again to the Court that the post-deprivation hearing was not sufficient to satisfy the Due Process Clause. I would request that the Court, again, order the Bureau of Prisons to correct his record to reflect that he was to be released on October 10, 2012 and to find that the failure to release him on that date where he did have an earned good conduct time liberty interest, where he did receive in absentia hearings and post-deprivation remedies, that those were insufficient to satisfy the Due Process Clause and that the respondents did violate his due process rights. If the Court doesn't have any additional questions, I would rest on my brief. Thank you. Good morning, Your Honors. Good morning. Christina Wickers for the respondents. The only issue in this case is whether the District Court, Mr. Francis, did over-serve his prison term by a certain period of time. We don't agree on how long that period of time was. Whether, nevertheless, it did not result from a violation of his Fifth Amendment right to procedural due process. And it is our opinion that the District Court's decision was correct. Mr. Francis was entitled to three things under the Fifth Amendment to satisfy procedural due process. Advanced written notice of the correctional needs and a written decision supported by some evidence in the record. All three of those things were met here and, therefore, there was no Fifth Amendment violation. I'm still having a little trouble understanding what is the practical difference between us agreeing with you and us agreeing with the plaintiff as to the petitioner as to whether or not there was a violation other than whether the 41 days needs to be added in to figuring out forward-going release terms. I've never really understood what it is that the petitioner is seeking. The District Court correctly interpreted Mr. Francis' request really as a motion to amend the terms of his supervised release. It was very awkward when we went in for the hearing before the District Court and the District Court said, well, I hear your client said to my sister counsel, I hear your client got arrested yesterday on a violation of the terms of his supervised release, so why don't we address this issue in his violation hearing, which will, of course, be held in the criminal case. Judge Young was the judge in both cases. He then scheduled that to be heard at the violation hearing. I did watch the violation hearing as an observer. I don't recall whether my sister counsel mentioned the 52 days or not, but it was certainly Mr. Francis' issue to raise at that time. The judge in the criminal hearing at the violation hearing, excuse me, found that, well, Mr. Francis admitted violating the terms of his supervised release, and so Judge Young terminated the end of the supervised release period that was then in place and issued a whole new two years from that date. If Mr. Francis did not raise at that time, judge, please, would you consider the extra 52 days that I served in prison, that falls on him. He did not appeal that ruling. From where I stand, we concede that Mr. Francis over-served his prison term by 52 days. There's really no question about that, and he may well have some other sort of FTCA remedy for that if he's looking for no due process violation. It can't lead to a Bivens remedy, so I'm not really sure what he's seeking. My sister counsel has mentioned an amendment of his prison record. It's in the joint appendix. I don't have the page in front of me, but the prison record does indicate that he should have been released on November 16, 2012, not the October 2012 date that my sister counsel has referred to. Her reliance on that, Mr. Francis' reliance on that date has always been based on an argument that his good conduct time vested back in October, but of course the statute says it doesn't vest until the date of your release. But the prison record says right in the joint appendix, he should have been released November 16, 2012. So that prison record has already been amended, so there's no dispute from our point of view that he did over-serve 52 days. If we hold that the administrative proceeding can be held later, after the time has already run, and that there's no violation if it turns out the credits are lost, are we in effect blessing a situation where the prison can just unilaterally, without hearing, extend the time, take away the credits, and then only reinstitute them at a time where there's no real remedy? No, I don't think so, Judge Chiara, because here the whole reason that there was what Mr. Francis first used as a post-deprivation remedy, although I don't agree with that term, was that he was not in BOP custody when it was time to do the disciplinary hearing. There's no dispute in any loss of good conduct time. We don't dispute he was entitled to a disciplinary hearing. But when it was time for the disciplinary hearing, he was not in our custody. He was in transit and in the custody of the U.S. Marshals Service between Coolidge House and the next secure BOP facility that he'd go to. What are we to do? We tried. We contacted the facility where the marshals were holding him, which was the Plymouth County House of for his disciplinary hearing, and they said, no. What are we to do? We have no choice but to do. We can't just dismiss the disciplinary charges. That would be rewarding him for the initial disciplinary violation that led to his removal from Coolidge House. So we hold an in absentia hearing. We did that with the knowledge that, and then there was a hearing, excuse me, a decision based on that that went up to the disciplinary hearing officer at who didn't agree with one of them but agreed with the others. And they did that in accordance with the BOP regulations and in accordance with the knowledge that when Mr. Francis would return to secure BOP custody, he would be entitled under both Supreme Court precedent and the BOP regulations to an in-person hearing. And that was held. BOP regulations say it should ordinarily be the in-person hearing within 60 days following your return to secure custody. I believe it was 66 days here. But it's not like BOP was sitting on its hands once Mr. Francis returned to secure custody on November 1, 2012. First they got the paperwork together on the four remaining charges on which in absentia hearings had been held to get to Mr. Francis so he could see what had happened and what he was charged with and so on. Then he was entitled to disciplinary hearing committee, DHC hearings, or unit committee I forget if it was UCC or DHC, the committee hearings that are equivalent to the CDC hearings at the Coolidge House that he was entitled to at McKean. Then the DHO who was going to hold the in-person hearing, Mr. Schneider, contacted the witness that Mr. Francis wanted to have, Andy LeClaire from Coolidge House, found that he was unavailable, obtained a written statement from him I believe on January 3rd, and then the hearing was held I believe it was January 7th. The very day of the in-person hearing, Mr. Francis was released. So it was an unfortunate set of circumstances, but really nobody's fault. It was in accordance with the regulations. There's no evidence here, getting more to your point Judge Chiara, of sort of evil motive or intentionally extending the process much longer than it should have been, it was a matter of circumstance. He was absent from the facility, so they had to do the in absentia hearings, and then once he was returned to secure BOP custody, they didn't sit on their hands, they did relatively promptly get to the in-person hearing. And there was of course no way to know from the date that Mr. Francis arrived at FCI McKean in Pennsylvania that anybody was going to overturn three of the four disciplinary findings. Had Mr. Schneider not done that, Mr. Francis would not have been released until late February, and we wouldn't be here. There wouldn't have been an over-serving of the prison term. If there are no additional questions, I'll rest on my brief. Thank you.